# EXHIBIT E

# DROIGSA-08-0021
# INTERGOVERNMENTAL SERVICE AGREEMENT
## BETWEEN THE
## UNITED STATES DEPARTMENT OF HOMELAND SECURITY
## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
## AND
## Town of Farmville

This Intergovernmental Service Agreement ("Agreement") is entered into between United States Department of Homeland Security Immigration and Customs Enforcement ("ICE"), and the Town of Farmville ("Service Provider") for the detention and care of aliens ("detainees"). The term "Parties" is used in this Agreement to refer jointly to ICE and the Service Provider.

**FACILITY LOCATION:**

The Service Provider shall provide detention services for detainees at the following institution(s):

**Town of Farmville**
116 North Main Street
Farmville, Virginia 23901

**The following constitute the complete agreement:**

- INTERGOVERNMENTAL SERVICE AGREEMENT (IGSA)
- PROPOSAL, DATED __________ (Incorporated by reference)
- ATTACHMENT 1--STATEMENT OF WORK
- ATTACHMENT 2—QUALITY CONTROL PLAN
- ATTACHMENT 3—QUALITY ASSURANCE SURVEILLANCE PLAN (w/ PRS, CDR and PMT)
- ATTACHMENT 4—STAFFING PLAN
- ATTACHMENT 5—LABOR STANDARDS
- ATTACHMENT 6—WAGE DETERMINATION Number ________ Dated _______

IN WITNESS WHEREOF, the undersigned, duly authorized officers, have subscribed their names on behalf of the Town of Farmville and Department of Homeland Security, U.S. Immigration and Customs Enforcement.

**ACCEPTED:**

U.S. Immigration and Customs Enforcement
(b)(6), (b)(7)(c)

Contracting Officer
Sign (b)(6), (b)(7)(c)
Print Name
Date: 10 Sept 08

**ACCEPTED:** (b)(6), (b)(7)(c)

Town of Farmvi
(b)(6), (b)(7)(c)

Town Manager
(b)(6), (b)(7)(c)
Print Name:
Date: 9/9/08

ICE.2012FOIA3030000658

**Article I. Purpose**

A. Purpose: The purpose of this Intergovernmental Service Agreement (IGSA) is to establish an Agreement between ICE and the Service Provider for the detention and care of persons detained under the authority of Immigration and Nationality Act, as amended. All persons in the custody of the ICE are "Administrative Detainees". This term recognizes that ICE detainees are not charged with criminal violations and are only held in custody to assure their presence throughout the administrative hearing process and to assure their presence for removal from the United States pursuant to a lawful final order by the Immigration Court, the Board of Immigration Appeals or other Federal judicial body.

B. Responsibilities: This Agreement sets forth the responsibilities of ICE and the Service Provider. The Agreement states the services the Service Provider shall perform satisfactorily to receive payment from ICE at the rate prescribed in Article I, C.

C. Guidance: This is a fixed rate agreement, not a cost reimbursable agreement, with respect to the detainee day rate. The detainee daily rate is **$TBD.** ICE shall be responsible for reviewing and approving the costs associated with this Agreement and subsequent modifications utilizing all applicable federal procurement laws, regulations and standards in arriving at the detainee day rate.

**Article II. General**

A. Funding: The obligation of ICE to make payments to the Service Provider is contingent upon the availability of Federal funds. ICE will neither present detainees to the Service Provider nor direct performance of any other services until ICE has the appropriate funding. Orders will be placed under this Agreement when specific requirements have been identified and funding obtained. Performance under this Agreement is not authorized until the Contracting Officer issues an order, in writing. The effective date of the Agreement will be negotiated and specified in an order to this Agreement by the Contracting Officer. This Agreement is neither binding nor effective unless signed by the Contracting Officer. Payments at the approved rate will be paid upon the return of the signed Agreement by the authorized Local Government official to ICE.

B. Subcontractors: The Service Provider shall notify and obtain approval from the Contracting Officer if it intends to house detainees in a facility other than the Facility named in this Agreement. If either that facility or any future facility is operated by an entity other than the Service Provider, ICE shall treat the entity as a subcontractor to the Service Provider. The Service Provider shall obtain the Contracting Officer's approval before subcontracting the detention and care of detainees to another entity. The Contracting Officer has the right to deny, withhold, or withdraw approval of the proposed subcontractor. Upon approval by the Contracting Officer, the Service Provider shall ensure that any subcontract includes all provisions of this Agreement, and shall provide ICE with copies of all subcontracts. All payments will be made to the Service Provider. ICE will not accept invoices from, or make payments to a subcontractor.

C. Consistent with Law: This is a firm fixed rate agreement, not cost reimbursable agreement. This Agreement is permitted under applicable statutes, regulation, policies or

judicial mandates. Any provision of this Agreement contrary to applicable statutes, regulation, policies or judicial mandates is null and void and shall not necessarily affect the balance of the Agreement.

D. Use of Service Provider's Policies and Procedures: The Contracting Officer shall approve Service Provider's policies and procedures for use under this Agreement. Upon approval, the Service Provider can use its policies and procedures in conjunction with the detention standards mandated under this Agreement.

E. Notification and Public Disclosure: No public disclosures (i.e. press releases, press conferences) regarding this IGSA shall be made by the Service Provider or any of its contractors or subcontractors without the review and approval of such disclosure by ICE Public Affairs and express permission granted by the ICE Contracting Officer.

**Article III. Covered Services**

Below are the general requirements under this Agreement. Specific requirements for the services under this Agreement are stated in the attached Statement of Work. See Attachment 1.

A. Bedspace: The Service Provider shall provide male/female beds on a space available basis. The Service Provider shall house all detainees as determined within the Service Provider's classification system.

B. Basic Needs: The Service Provider shall provide detainees with safekeeping, housing, subsistence, medical and other services in accordance with this Agreement. In providing these services, the Service Provider shall ensure compliance with all applicable laws, regulations, fire and safety codes, policies and procedures. If the Service Provider determines that ICE has delivered a person for custody who is under the age of eighteen (18), the Service Provider shall not house that person with adult detainees and shall immediately notify the Contracting Officer's Technical Representative (COTR).

C. Interpretive Services: The Service Provider shall make special provisions for non-English speaking, handicapped or illiterate detainees. ICE will reimburse the Service Provider for the actual costs associated with providing commercial written or telephone language interpretive services. Upon request, ICE will assist the Service Provider in obtaining translation services. The Service Provider shall provide all instructions verbally either in English or the detainees' language, as appropriate, to detainees who cannot read. The Service Provider shall include the actual costs that the Service Provider paid for such services on its monthly invoice. Except in emergency situations, the Service Provider shall not use detainees for translation services. If the Service Provider uses a detainee for translation service, it shall notify ICE within 24 hours of the translation service.

D. Escort and Transportation Services: The Service Provider will provide, upon request and as scheduled by the Contracting Officer's Technical Representative (COTR) or Contracting Officer (CO), necessary escort and transportation services for detainees to and from designated locations. Escort services will be required for escorting detainees to court hearings; escorting witnesses to the courtroom and any escort services as requested by an ICE judge during proceedings. Escort and transportation services shall also include

providing all such air and/or ground transportation services as may be required to transport detainees securely and in a timely manner. Transportation and/or escort services may be required to transport detainees from the Facility to and from a medical facility for outpatient care. During all transportation activities, at least one (1) transportation officer shall be of the same sex as the detainees being transported. The Service Provider shall use a communications system that has direct and immediate contact with all transportation vehicles. Transportation and escort services shall be provided in the most economical and efficient manner. The Service Provider personnel provided for these services shall be of the same qualifications, receive training, complete the same security clearances, and wear the same uniforms as those personnel provided for in other areas of this Agreement. The Statement of Work shall provide specific escort and transportation services unique for this Agreement.

E. Guard Services: The Service Provider agrees to provide stationary guard services on demand by the COTR or Contracting Officer and shall include, but are not limited to, escorting and guarding detainees to medical or doctor's appointments, hearings, ICE interviews, and any other location requested by the COTR. Qualified personnel employed by the Service Provider will perform such services. The Service Provider agrees to augment such practices as may be requested by ICE to enhance specific requirements for security, detainee monitoring, visitation, and contraband control. Public contact is prohibited unless authorized in advance by the COTR or Contracting Officer. The Service Provider shall be authorized to provide at lease (b)(7)(e) officers for each remote post, as directed by the COTR or Contracting Officer.

F. Medical Services: The Statement of Work shall provide specific medical service requirements unique to this Agreement. Regardless of the unique requirements for this contract, the Service Provider shall provide the following services regarding medical care of detainees:

1) The Service Provider shall provide for medical screening of every detainee upon arrival at the Facility performed by health care personnel or health trained personnel.
2) Medical coverage at the Facility shall be no less than twenty-four (24) hours per day, seven (7) days per week.
3) The Service Provider shall provide the detainees written instructions for gaining access to health care services. Procedures shall be explained to all detainees in the detainees' native language, and orally to detainees' who are unable to read. The detainee shall similarly be provided instructions and assistance in personal hygiene, dental hygiene, grooming and health care. It shall be made routinely available.
4) The Service Provider shall provide to all detainees a written policy and defined procedure to require that detainee's written health complaints are solicited and delivered to the medical facility for appropriate follow-up. Written policy and defined procedure shall require that health care complaints are responded to and that sick call, conducted by health care personnel or health trained personnel is available to detainees daily. If a detainee's custody status precludes attendance at sick call, arrangements shall be made to provide sick call services in the place of the detainee's detention. A minimum of one sick call shall be conducted daily.

USPHS reserves the right to conduct triage and sick call in the place of the detainee's detention.

5) The Service Provider shall provide and maintain basic first aid kits throughout the Facility. First aid kits shall be available at all times to allow quick access.
6) The Service Provider shall provide security with a minimum of a staff of one at all times. When detainees are housed in the infirmary, a security guard shall be posted to the unit 24 hours a day, seven days a week. The Service Provider shall coordinate and escort detainees to the medical clinic for sick call, appointments and pill line.
7) When communicable or debilitating physical problems are suspected, the detainee shall be separated from the detainee population, and immediately notify USPHS staff. Behavioral problems (detainee who is not diagnosed as psychotic) and suicide observation will be the responsibility of the Service Provider.

**Article IV. Receiving and Discharging Detainees**

A. Required Activity: The Service Provider shall receive and discharge detainees only to and from properly identified ICE personnel or other properly identified Federal law enforcement officials with prior authorization from DHS/ICE. Presentation of U.S. Government identification shall constitute "proper identification." The Service Provider shall furnish receiving and discharging services twenty-four (24) hours per day, seven (7) days per week. ICE shall furnish the Service Provider with reasonable notice of receiving and discharging detainees. The Service Provider shall ensure positive identification and recording of detainees and ICE officers. The Service Provider shall not permit medical or emergency discharges except through coordination with on-duty ICE officers.

B. Restricted Release of Detainees: The Service Provider shall not release detainees from its physical custody to any persons other than those described in Paragraph A of Article IV for any reason, except for either medical, other emergency situations, or in response to a federal writ of habeas corpus. If a detainee is sought for federal, state, or local proceedings, only ICE may authorize release of the detainee for such purposes. The Service Provider shall contact the COTR immediately regarding any such requests.

C. Service Provider Right of Refusal: The Service Provider retains the right to refuse acceptance or request removal of any detainee exhibiting violent or disruptive behavior, or of any detainee found to have a medical condition that requires medical care beyond the scope of the Service Provider's health care provider. In the case of a detainee already in custody, the Service Provider shall notify ICE and request removal of the detainee from the Facility. The Service Provider shall allow ICE reasonable time to make alternative arrangements for the detainee.

D. Emergency Evacuation: In the event of an emergency requiring evacuation of the Facility, the Service Provider shall evacuate detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority. The Service Provider shall notify the Contracting Officer and COTR within two (2) hours of evacuation.

ICE.2012FOIA3030000662

**Article V. ICE National Detention Standards**

A. The Service Provider is required to house detainee and perform related detention services in accordance with the most current edition of the ICE National Detention Standards found within the **ICE Detention Operations Manual.** This manual can be found at http://www.ice.gov/partners/dro/opsmanual/index. ICE Inspectors will conduct periodic inspections of the facility to assure compliance with the ICE National Detention Standards.

B. The Service Provider shall certify to the Contracting Officer and COTR that its personnel have completed all training as required by the ICE Detention Operations Manual, the Service Provider's own manual (if it is approved for use by the Contracting Officer), and any additional training as required in any manuals or detention standards referenced in this Agreement.

**Article VI. No Employment of Unauthorized Aliens**

Subject to existing laws, regulations, Executive Orders, and addenda to this Agreement, the Service Provider shall not employ aliens unauthorized to work in the United States. Except for maintaining personal living areas, detainees shall not be required to perform manual labor.

**Article VII. Period of Performance**

This Agreement shall become effective upon the date of final signature by the ICE Contracting Officer and the authorized signatory of the Service Provider and will remain in effect for a period not to exceed sixty (60) months, unless terminated in writing, by either party. Either party must provide written notice of intentions to terminate the agreement, 60 days in advance of the effective date of formal termination, or the Parties may agree to a shorter period under the procedures prescribed in Article X.

**Article VIII. Inspections**

The Facility and Provider's services shall be inspected in accordance with the following procedures:

A. Definitions. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

B. The Provider shall provide and maintain an inspection system acceptable to the Government covering the services under this agreement. Complete records of all inspection work performed by the Provider shall be maintained and made available to the Government during contract performance and for as long afterwards as the agreement requires.

C. The Government has the right to inspect and test all services called for by the agreement, to the extent practicable at all times and places during the term of the agreement. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

D. If the Government performs inspections or tests on the premises of the Provider or a subcontractor, the Provider shall furnish, and shall require subcontractors to furnish, at no increase in agreement price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

E. If any of the services do not conform to agreement requirements, the Government may require the Provider to perform the services again in conformity with agreement requirements, at no increase in agreement amount. When the defects in services cannot be corrected by re-performance, the Government may (1) require the Provider to take necessary action to ensure that future performance conforms to agreement requirements and (2) reduce the agreement price to reflect the reduced value of the services performed.

F. If the Provider fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with agreement requirements, the Government may (1) by contract or otherwise, perform the services and charge to the Provider any cost incurred by the Government that is directly related to the performance of such service or (2) terminate the agreement for default.

**Article IX. Inspection Reports**

A. Inspection Report: The Inspection Report stipulates minimum requirements for fire/safety code compliance, supervision, segregation, sleeping utensils, meals, medical care, confidential communication, telephone access, legal counsel, legal library, visitation, and recreation. The Service Provider shall allow ICE to conduct inspections of the facility, as required, to ensure an acceptable level of services and acceptable conditions of confinement as determined by ICE. No notice to the Service Provider is required prior to an inspection. ICE will conduct such inspections in accordance with the Inspection Report. ICE will share findings of the inspection with the Service Provider's facility administrator. The Inspection Report will state any improvements to facility operation, conditions of confinement, and level of service that will be required by the Service Provider.

B. Possible Termination: If the Service Provider fails to remedy deficient service ICE identifies through inspection, ICE may terminate this Agreement without regard to the provisions of Articles VII and X.

C. Share Findings: The Service Provider shall provide ICE copies of facility inspections, reviews, examinations, and surveys performed by accreditation sources.

D. Access to Detainee Records: The Service Provider shall, upon request, grant ICE access to any record in its possession, regardless of whether the Service Provider created the record, concerning any detainee held pursuant to this Agreement. This right of access shall include, but is not limited to, incident reports, records relating to suicide attempts, and behavioral assessments and other records relating to the detainee's behavior while in the Service Provider's custody. Furthermore, the Service Provider shall retain all records where this right of access applies for a period of two (2) years from the date of the detainee's discharge from the Service Provider's custody.

ICE.2012FOIA3030000664

**Article X. Modifications and Disputes**

A. Modifications: Actions other than those designated in this Agreement will not bind or incur liability on behalf of either Party. Either Party may request a modification to this Agreement by submitting a written request to the other Party. A modification will become a part of this Agreement only after the ICE Contracting Officer and the authorized signatory of the Service Provider have approved the modification in writing.

B. Disputes: The ICE Contracting Officer and the authorized signatory of the Service Provider will settle disputes, questions and concerns arising from this Agreement. Settlement of disputes shall be memorialized in a written modification between the ICE Contracting Officer and authorized signatory of the Service Provider. In the event a dispute is not able to be resolved between the Service Provider and the ICE Contracting Officer, the ICE Contracting Officer will make the final decision. If the Service Provider does not agree with the final decision, the matter may be appealed to the ICE Head of the Contracting Activity (HCA) for resolution. The ICE HCA may employ all methods available to resolve the dispute including alternative dispute resolution techniques. The Service Provider shall proceed diligently with performance of this Agreement pending final resolution of any dispute.

**Article XI. DETAINEE DAY RATE and ADJUSTMENT to the DAY RATE**

A. Detainee Day Rate: In consideration for the Service Provider's performance under this Agreement, ICE shall make payment to the Service Provider for each detainee accepted and housed by the Service Provider. This "detainee day rate" is a per diem rate for the support of one Detainee per day and shall include the day of arrival but not the day of departure.

B. The detainee day rate is **TBD.**

C. The Service Provider, by execution of this Agreement, certifies that the pricing established under this agreement is in compliance with OMB Circular A-87 and includes only allowable costs of performance under this agreement.

D. Basis for Price Adjustment: A firm fixed price with economic adjustment provides for upward and downward revision of the stated Per Diem based upon cost indexes of labor and operating expenses, or based upon the Service Provider's actual cost experience in providing the service.

E. ICE shall reimburse the Service Provider at the fixed detainee day rate shown on the cover page of the document, Article I. (C). The Parties may adjust the rate twelve (12) months after the effective date of the agreement and no sooner then every twelve (12) months. The Parties shall base the cost portion of the rate adjustment on the principles of allowability and allocability as set forth in OMB Circular A-87, federal procurement laws, regulations, and standards in arriving at the detainee day rate. The request for adjustment shall be submitted on an ICE Jail Services Cost Statement. If ICE does not receive an official request for a detainee day rate adjustment that is supported by an ICE Jail Services Cost Statement, the detainee day rate as stated in this Agreement will control.

F. ICE reserves the right to audit the actual and/or prospective costs upon which the rate adjustment is based. All rate adjustments are prospective. As this is a fixed rate agreement, there are no retroactive adjustment(s).

G. Guard and transportation services shall be denoted as separate items on submitted invoices. ICE agrees to reimburse the Service Provider for actual stationary guard services provided at a negotiated rate of **$24.28**. Transportation mileage reimbursable rates will be commensurate with current applicable federal travel allowance rates. Any additional operational costs will be reimbursed at the negotiated rate identified in the task order (HSCEDM-08-F-IG064). The additional items shall also be billed as separate line items until modified in the task order.

**Article XII. Enrollment, Invoicing, and Payment**

A. Enrollment in Electronic Funds Transfer: The Service Provider shall provide ICE with the information needed to make payments by electronic funds transfer (EFT). Since January 1, 1999, ICE makes all payments only by EFT. The Service Provider shall identify their financial institution and related information on Standard Form 3881, Automated Clearing House (ACH) Vendor Miscellaneous Payment Enrollment Form. The Service Provider shall submit a completed SF 3881 to ICE payment office prior to submitting its initial request for payment under this Agreement. If the EFT data changes, the Service Provider shall be responsible for providing updated information to the ICE payment office.

B. Invoicing: The Service Provider shall submit an original itemized invoice containing the following information: the name and address of the facility; the name of each ICE detainee; detainee's A-number; specific dates of detention for each detainee; the total number of detainee days; the daily rate; the total detainee days multiplied by the daily rate; an itemized listing of all other charges; and the name, title, address, and phone number of the local official responsible for invoice preparation. For stationary guard services, the itemized monthly invoice shall state the number of hours being billed, the duration of the billing (times and dates) and the name of the detainee(s) that was guarded. The Service Provider shall submit monthly invoices within the first ten (10) working days of the month following the calendar month when it provided the services, to:

Department of Homeland Security
ATTN: Immigration and Customs Enforcement
Contracting Officer's Technical Representative (COTR)
2675 Property Avenue
Fairfax, Va. 22031
Phone: 703-285- (b)(6), (b)(7)(c)
Fax: 703-285-6236

C. Payment: ICE will transfer funds electronically through either an Automated Clearing House subject to the banking laws of the United States, or the Federal Reserve Wire Transfer System. The Prompt Payment Act applies to this Agreement. The Prompt Payment Act requires ICE to make payments under this Agreement the thirtieth (30th) calendar day after the ICE Deportation office receives a complete invoice. Either the date

on the Government's check, or the date it executes an electronic transfer of funds, shall constitute the payment date. The Prompt Payment Act requires ICE to pay interest on overdue payments to the Service Provider. ICE will determine any interest due in accordance with the Prompt Payment Act.

**Article XIII. Government Furnished Property**

A. Federal Property Furnished to the Service Provider: ICE may furnish Federal Government property and equipment to the Service Provider. Accountable property remains titled to ICE and shall be returned to the custody of ICE upon termination of the Agreement. The suspension of use of bed space made available to ICE is agreed to be grounds for the recall and return of any or all government furnished property.

B. Service Provider Responsibility: The Service Provider shall not remove ICE property from the facility without the prior written approval of ICE. The Service Provider shall report any loss or destruction of any Federal Government property immediately to ICE.

**Article XIV. Hold Harmless and Indemnification Provisions**

A. Service Provider Held Harmless: ICE shall, subject to the availability of funds, save and hold the Service Provider harmless and indemnify the Service Provider against any and all liability claims and costs of whatever kind and nature, for injury to or death of any person(s), or loss or damage to any property, which occurs in connection with or is incident to performance of work under the terms of this Agreement, and which results from negligent acts or omissions of ICE officers or employees, to the extent that ICE would be liable for such negligent acts or omissions under the Federal Tort Claims Act, 28 USC 2691 *et seq.*

B. Federal Government Held Harmless: The Service Provider shall save and hold harmless and indemnify federal government agencies to the extent allowed by law against any and all liability claims, and costs of whatsoever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work under the tenets of this Agreement, resulting from the negligent acts or omissions of the Service Provider, or any employee, or agent of the Service Provider. In so agreeing, the Service Provider does not waive any defenses, immunities or limits of liability available to it under state or federal law. The Service Provider agrees to hold harmless and indemnify DHS/ICE and its officials in their official and individual capacities from any liability, including third-party liability or worker's compensation, arising from the conduct of the Service Provider and its employees during the course of transporting detainees on behalf of ICE.

C. Defense of Suit: In the event a detainee files suit against the Service Provider contesting the legality of the detainee's incarceration and/or immigration/citizenship status, ICE shall request that the U.S. Attorney's Office, as appropriate, move either to have the Service Provider dismissed from such suit, to have ICE substituted as the proper party defendant; or to have the case removed to a court of proper jurisdiction. Regardless of the decision on any such motion, ICE shall request that the U.S. Attorney's Office be responsible for the defense of any suit on these grounds.

D. ICE Recovery Right: The Service Provider shall do nothing to prejudice ICE's right to recover against third parties for any loss, destruction of, or damage to U.S. Government property. Upon request of the Contracting Officer, the Service Provider shall, at ICE's expense, furnish to ICE all reasonable assistance and cooperation, including assistance in the prosecution of suit and execution of the instruments of assignment in favor of ICE in obtaining recovery.

**Article XV. IGSA/Financial Records**

A. Retention of Records: All IGSA and financial records including, but not limited to, supporting documents, statistical records, and other records, pertinent contracts, or subordinate agreements under this Agreement shall be retained by the Service Provider for three (3) years after the expiration of the Agreement for purposes of federal examinations and audit. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the three (3) year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular three (3) year period, whichever is later.

B. Access to Records: ICE and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers or other records of the Service Provider or its sub-contractors, which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

C. Delinquent Debt Collection: ICE will hold the Service Provider accountable for any overpayment, or any breach of this Agreement that results in a debt owed to the Federal Government. ICE shall apply interest, penalties, and administrative costs to a delinquent debt owed to the Federal Government by the Service Provider pursuant to the Debt Collection Improvement Act of 1982, as amended.

**Article XVI. Detainee Telephone Services (DTS)**

A. The **PROVIDER** shall provide detainees with reasonable and equitable access to telephones as specified in ICE National Detention Standards on Telephone Access. Telephones shall be located in an area that provides for a reasonable degree of privacy and a minimal amount of environmental noise during phone calls.

B. If authorized to do so under applicable law, the **PROVIDER** shall monitor and record detainee conversations. If detainee telephone conversations can be monitored under applicable law, the **PROVIDER** shall provide notice to detainees of the potential for monitoring. However, the **PROVIDER** shall also provide procedures at the facility for detainees to be able to place unmonitored telephone calls to their attorneys.

C. Telephone rates shall not exceed the dominant carrier tariff rate and shall conform to all applicable federal, state, and local telephone regulations.

D. The ICE designated DTS Contractor will be the exclusive provider of detainee telephones for this facility. The DTS Contractor shall be allowed to install vending debit machines and shall receive 100 percent of all revenues collected by sale of prepaid debit services. The DTS Contractor shall be responsible for furnishing all inventory and supply of prepaid debit cards to the **PROVIDER**. The DTS Contractor shall be responsible for the costs incurred for installation of the equipment, any monthly telephone charges incurred from the operation of DTS, and the maintenance and operation of the system. The **PROVIDER** will not be entitled to any commissions, fees, or revenues generated by the use of the DTS or the detainee telephones.

E. The **PROVIDER** shall inspect telephones for serviceability, in accordance with ICE policies and procedures. The **PROVIDER** will notify the COTR or ICE designees of any inoperable telephones.

**Article XVII. Maintain Institutional Emergency Readiness**

A. The Service Provider shall submit an institutional emergency plan that will be operational prior to start of the Agreement. The plan shall receive the concurrence of the Contracting Officer prior to implementation and shall not be modified without the further written concurrence of the Contracting Officer.

B. The Service Provider shall have written agreements with appropriate state and local authorities that will allow the Service Provider to make requests for assistance in the event of any emergency incident that would adversely affect the community.

C. Likewise, the Service Provider shall have in place, an internal corporate nation-wide staff contingency plan consisting of employees who possess the same expertise and skills required of staff working directly on this agreement. At the discretion of ICE, these employees would be required to respond to an institutional emergency at the Facility, when necessary.

D. The emergency plans shall include provisions for two or more disturbance control teams. Protective clothing and equipment for each team member and 30 percent of all additional facility staff members shall be provided by the Service Provider, and maintained in a secure location outside the secure perimeter of the facility.

E. Any decision by ICE or other federal agencies to provide and/or direct emergency assistance will be at the discretion of the Government. The Service Provider shall reimburse the Government for any and all expenses incurred in providing such assistance.

F. The Contracting Officer and COTR shall be notified immediately in the event of all serious incidents. Serious incidents include, but are not limited to the following: activation of disturbance control team(s); disturbances (including gang activities, group demonstrations, food boycotts, work strikes, work-place violence, civil disturbances/protests); staff use of force including use of lethal and less-lethal force (includes inmates in restraints more than eight hours); assaults on staff/inmates resulting in injuries requiring medical attention (does not include routine medical evaluation after the incident); fights resulting in injuries requiring medical attention; fires; full or partial lock down of the facility; escape; weapons discharge; suicide attempts; deaths; declared

or non-declared hunger strikes; adverse incidents that attract unusual interest or significant publicity; adverse weather (e.g., hurricanes, floods, ice/snow storms, heat waves, tornadoes); fence damage; power outages; bomb threats; central inmate monitoring cases admitted to a community hospital; witness security cases taken outside the facility; significant environmental problems that impact the facility operations; transportation accidents (i.e. airlift, bus) resulting in injuries, death or property damage; and sexual assaults.

G. Attempts to apprehend the escapee(s) shall be in accordance with the Emergency Plan, which should comply with ICE Detention Operations Manual regarding Emergency Plans.

H. The Service Provider shall submit to the COTR a proposed inventory of intervention equipment (weapons, munitions, chemical agents, electronics/stun technology, etc.) intended for use during performance of this Agreement. Prior to the start of this Agreement, the Contracting Officer shall approve the intervention equipment. The approved intervention equipment inventory shall not be modified without prior written concurrence of the Contracting Officer.

I. The Service Provider shall obtain the appropriate authority from state or local law enforcement agencies to use force as necessary to maintain the security of the institution. The use of force by the Provider shall at all times be consistent with all applicable policies of ICE Detention Operations Manual regarding Use of Force.

**XVIII. Security Requirements**

A. GENERAL

The Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Office of Professional Responsibility, Personnel Security Unit (DHS-ICE-OPR-PSU, hereinafter OPR-PSU) has determined that performance of the tasks as described in IGSA (Contract) ________________ requires that the Service Provider (Contractor, subcontractor(s), vendor(s), etc. (herein known as Service Provider) have access to ICE detainees, and that the Service Provider will adhere to the following and shall expressly incorporate this provision into any and all Subcontracts or subordinate agreements issued in support of this Agreement .

B. SUITABILITY DETERMINATION

ICE-OPR-PSU shall have and exercise full control over granting, denying, withholding or terminating unescorted government facility and/or access to ICE detainees, as well as, when applicable, sensitive Government information access for Service Provider employees, based upon the results of a background investigation.

ICE-OPR-PSU may, as it deems appropriate, authorize and make a favorable entry on duty (EOD) decision based on preliminary security checks. The favorable EOD decision would allow the Service Provider employees to commence work temporarily prior to the completion

ICE.2012FOIA3030000670

of the full investigation. The granting of a favorable EOD decision shall not be considered as assurance that a full employment suitability authorization will follow as a result thereof.

The granting of a favorable EOD decision or a full employment suitability determination shall in no way prevent, preclude, or bar the withdrawal or termination of any such access by ICE-OPR-PSU, at any time during the term of the IGSA. No employee of the Service Provider shall be allowed to EOD and/or access facilities or ICE detainees without a favorable EOD decision or suitability determination by OPR-PSU. No employee of the Service Provider shall be allowed unescorted access to a Government facility without a favorable EOD decision or suitability determination by OPR-PSU. Service Provider employees assigned to the IGSA not needing access to ICE detainees or recurring access to DHS-ICE facilities will not be subject to security suitability screening.

Suitability criteria as detailed in ICE Policy Directives that will exclude applicants from consideration to perform under this agreement include, but not limited to:

Felony convictions, or a conviction for any crime that involves violence
Conviction of a sex crime
Offense/s involving a child victim
Pattern of arrests, without convictions, that brings into question a person's judgment and reliability to promote the efficiency and integrity of the ICE mission.
Intentional falsification and/or omission of pertinent personal information
Drug and/or Alcohol Abuse
Personal conduct to include failure to pay just debts

The process for suitability determination includes, but is not limited to, criminal, employment, citizenship, residential and financial records checks and reviews.

## C. BACKGROUND INVESTIGATIONS

IGSA Service Provider employees (to include applicants, temporaries, part-time and replacement employees) under the contract, needing access to ICE detainees, shall undergo a position sensitivity analysis based on the duties each individual will perform on the contract. The results of the position sensitivity analysis shall identify the appropriate background investigation to be conducted. Background investigations will be processed, managed and conducted under direction of OPR-PSU.

In those cases where prospective IGSA Service Provider employees already have a security clearance issued by the Defense Industrial Security Clearance Office (DISCO), that was granted using an appropriate background investigation, reciprocity may apply in that those prospective employees may not be required to submit complete security packages, as the clearance issued by DISCO may be accepted.

Prospective Service Provider employees without adequate security clearances issued by DISCO shall submit the following completed forms to the Personnel Security Unit through the COTR, no less than 45 days before the starting date of the IGSA (contract), or 45 days prior to the expected entry on duty of any employees, whether a replacement, addition, subcontractor employee, or vendor:

Standard Form 85P, "Questionnaire for Public Trust Positions"
Form will be submitted via e-QIP (electronic Questionnaires for Investigation Processing)
FD Form 258, "Fingerprint Card" **(2 copies)**
Foreign National Relatives or Associates Statement
DHS 11000-9, "Disclosure and Authorization Pertaining to Consumer Reports Pursuant to the Fair Credit Reporting Act"
Drug Questionnaire
Alcohol Questionnaire

Details regarding the required forms will be provided by ICE-OPR. Only complete packages will be accepted by OPR-PSU. Specific instructions on submission of packages will be provided by OPR-PSU.

PLEASE NOTE: Unless an applicant has resided in the US for three of the past five years, with few exceptions such as military or other federal service overseas, the Government may not be able to complete a satisfactory background investigation. In such cases, OPR-PSU retains the right to deem an applicant as ineligible due to insufficient background information.

D. SUITABILITY – RETROACTIVE EFFECT

Employees of the Service Provider(s) who have not been previously investigated as described under the Background Investigations section, above, must be scheduled not later than six months after implementation of this IGSA. Employees of the Service Provider(s) may continue to work while the investigation is in progress.

E. CONTINUED ELIGIBILITY

If a prospective Service Provider employee is found to be ineligible for access to Government facilities or information, the COTR will advise the Service Provider that the employee shall not continue to work or to be assigned to work under the contract.

The OPR-PSU may require drug screening for probable cause at any time and/ or when the contractor independently identifies, circumstances where probable cause exists.

The OPR-PSU may require reinvestigations when derogatory information is received and/or every 10 years.

ICE-OPR reserves the right and prerogative to deny and/ or restrict the facility and information access of any Service Provider employee whose actions are in conflict with the standards of conduct as detailed in 5 CFR 2635 and 5 CFR 3801, or whom ICE-OPR-PSU determines to present a risk of compromising ICE standards and conduct, including sensitive Government information, to which he or she would have access under this contract.

The Service Provider will report any adverse information coming to their attention concerning contract employees under the IGSA to OPR-PSU through the COTR. Reports based on rumor or innuendo should not be made. The subsequent termination of employment of an employee does not obviate the requirement to submit this report. The

report shall include the employees' name and social security number, along with the adverse information being reported.

OPR-PSU must be notified of all terminations/ resignations within five days of occurrence.

If applicable, the Service Provider will return any expired ICE-DRO owned employee identification cards and/or building passes, or those of employees terminated and/or removed from the IGSA to the COTR within five (5) workdays. If an identification card or building pass is not available to be returned, a report must be submitted to the COTR, referencing the pass or card number, name of individual to whom issued, the last known location and disposition of the pass or card. The COTR will return the identification cards and building passes to the responsible ID Unit.

F. EMPLOYMENT ELIGIBILITY

The Service Provider must agree that each employee working on this IGSA will have a Social Security Card issued and approved by the Social Security Administration.

The Service Provider shall be responsible to the Government for acts and omissions of his own employees and for any Subcontractor(s) and their employees.

ICE-DRO has determined that employment on this IGSA (Contract) shall be limited to U.S. Citizens, Lawful Permanent Residents and Conditional Permanent Residents.

Subject to existing law, regulations and/ or other provisions of this IGSA, illegal or undocumented aliens will not be employed by the Service Provider, or with this IGSA. Service Provider will ensure that this provision is expressly incorporated into any and all Subcontracts or subordinate agreements issued in support of this IGSA.

G. SECURITY MANAGEMENT

The Service Provider shall appoint a senior official to act as the Corporate Security Officer. The individual will interface with the OPR-PSU through the COTR on all personnel security matters and if applicable, information security matters.

The COTR and OPR-PSU shall have the right to inspect the procedures, methods, and facilities utilized by the Service Provider in complying with the security requirements under this contract. Should the COTR determine that the Service Provider is not complying with the security requirements of this contract, the Service Provider will be informed in writing by the Contracting Officer of the proper action to be taken in order to effect compliance with such requirements. Copies of these communications by both the

Contracting Officer and the Service Provider shall be provided to OPR-PSU.

H. INFORMATION TECHNOLOGY SECURITY

Should the scope of the work change to require IGSA Service Provider personnel to access DHS-ICE IT systems, DHS IT Management Directives preclude routine access to any DHS

ICE IT systems, to include those utilized by ICE-DRO, by Non-U.S. citizens, including Lawful Permanent Residents (LPRs).

The following computer security requirements apply to both Department of Homeland Security (DHS) operations and to the former Immigration and Naturalization Service operations (FINS). These entities are hereafter referred to as the Department.

I. INFORMATION TECHNOLOGY SECURITY CLEARANCE

When sensitive government information is processed on Department telecommunications and automated information systems, the Contractor agrees to provide for the administrative control of sensitive data being processed and to adhere to the procedures governing such data as outlined in *DHS IT Security Program Publication DHS MD 4300.Pub. or its replacement.* Contractor personnel must have favorably adjudicated background investigations commensurate with the defined sensitivity level.

Contractors who fail to comply with Department security policy are subject to having their access to Department IT systems and facilities terminated, whether or not the failure results in criminal prosecution. Any person who improperly discloses sensitive information is subject to criminal and civil penalties and sanctions under a variety of laws (e.g., Privacy Act).

## XIX. Accreditation

The Service Provider will have eighteen (18) months from commencement of this Agreement to become ACA accredited. The Service Provider shall, within nine (9) months from the date this facility becomes operational, formally apply for accreditation to the American Correctional Association. The Service Provider shall provide the Contracting Officer with written proof of such application to ICE within five (5) days of the application. The Service Provider shall provide the Contracting Officer with written proof of its accreditation within five (5) days of notification of its accreditation.

## XX. Quality Control

A. The Service Provider shall establish and maintain a complete Quality Control Program (QCP) acceptable to the Contracting Officer ("CO"), in consultation with the Contracting Officer's Technical Representative ("COTR") to assure the requirements of this Agreement are provided as specified in the Performance Requirement Summary (PRS)—Attachment 3.

The QCP shall:

1. Be implemented prior to the start of performance.

2. Provide quality control services that cover the scope of the IGSA and implement proactive actions to prevent non-performance issues.

B. A complete QCP addressing all areas of agreement performance shall be submitted to the COTR no later than 30 days after the Agreement effective date. All proposed changes to the QCP must be approved by the Contracting Officer. The Service Provider shall submit a resume of the proposed individual(s) responsible for the QCP to the CO for approval. The Service Provider shall not change the individual(s) responsible for the QCP without prior approval of the Contracting Officer.

C. The QCP shall include, at a minimum:

1. Specific areas to be inspected on either a scheduled or unscheduled basis and the method of inspection.

2. Procedures for written and verbal communication with the Government regarding the performance of the Agreement.

3. Specific surveillance techniques for each service identified in the Agreement and each functional area identified in the PRS.

4. The QCP shall contain procedures for investigation of complaints by the Service Provider and Government staff and feedback to the Government on the actions taken to resolve such complaints.

D. A file of all inspections, inspection results, and any corrective action required, shall be maintained by the Service Provider during the term of this Agreement. The Service Provider shall provide copies of all inspections, inspection results, and any corrective action taken to the COTR and Contracting Officer.

E. Failure by the Service Provider to maintain adequate quality control can result in monetary deductions based upon the schedule of deductions incorporated herein.

## XXI. Contracting Officer's Technical Representative

The Contracting Officer's Technical Representative (COTR) shall be designated by the Contracting Officer. When and if the COTR duties are reassigned, an administrative modification will be issued to reflect the changes. This designation does not include authority to sign contractual documents or to otherwise commit to, or issue changes, which could affect the price, quantity, or performance of this Agreement.

## XXII. Labor Standards and Wage Determination

A. The Service Contract Act, 41 U.S.C. 351 et seq., Title 29, Part 4 Labor Standards for Federal Service Contracts, is here by incorporated into this Agreement at Attachment 5. These standards and provisions are included in every contract over $2,500, or in an indefinite amount, that is entered into by the United States, the principal purpose of which is to furnish services through the use of service employees.

B. **Wage Determination:** Each service employee employed in the performance of this Agreement shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor or authorized representative, as specified in any wage determination attached to this Agreement at Attachment 6.

****************************************************************************

END OF DOCUMENT

****************************************************************************

ICE.2012FOIA3030000676