**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CHRISTIAN ALBERTO SANTOS GARCIA, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:20-cv-821-LMB-JFA |
| CHAD F. WOLF, *et al.*, | ) ) | |
| Defendants. | ) ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## FEDERAL DEFENDANTS' MOTION TO DISMISS, IN PART, FOR LACK OF
## JURISDICTION OR FAILURE TO STATE A CLAIM

Defendants Chad F. Wolf, U.S. Immigration and Customs Enforcement ("ICE"), Tony

Pham, and Russell Hott (collectively "Federal Defendants"), respectfully submit this memorandum

of law in support of their partial motion to dismiss in the above-captioned action pursuant to Rules

12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs bring this lawsuit challenging their conditions of confinement at the Farmville

Detention Center ("ICA Farmville") in light of COVID-19, seeking wholesale changes to the

conditions at the facility with respect to medical care, food service, and preventative measures

against COVID-19.  As part of their challenge, Plaintiffs bring substantive due process claims[1]

---

[1] Because any argument against Plaintiffs' substantive due process claims would rely on evidence
outside of the pleadings on a Rule 12(b)(6) motion, including evidence of the extensive measures
Defendants have taken to protect the detainee population at Farmville, Federal Defendants do not
move herein to dismiss those claims.  The Federal Defendants contend that Plaintiffs' due process
claims fail on the merits but will reserve those arguments for summary judgment.  Plaintiffs in their
Amended Complaint separately bring a variety of state tort law claims and claims under 42 U.S.C.
§ 1983 that are not pleaded against the Federal Defendants.

alleging that the conditions of confinement at ICA Farmville are unconstitutional, while also bringing a claim under the Administrative Procedure Act ("APA") against the Federal Defendants. As to this latter claim, Plaintiffs assert that Federal Defendants have violated the APA by not sufficiently complying with ICE's own standards for the care of detainees in ICE Custody—the Performance-Based National Detention Standards ("PBNDS")—and seek, *inter alia*, a wide-ranging injunction to have the Court order the compliance that Plaintiffs seek and to have "the Court . . . retain jurisdiction over Defendants to monitor compliance with the Court's order." Am. Compl. ¶ 12.

Plaintiffs' Complaint should be dismissed in part for two reasons. First, the claims of Plaintiffs Jose Linares Hernandez and Vano Bazerashvili as to Federal Defendants are moot because Plaintiff Linares Hernandez has been removed to Guatemala and because Plaintiff Bazerashvili has been released from ICA Farmville as a medically at-risk individual.[2] As a result, these Plaintiffs are in custody at ICA Farmville. As they are no longer detained in ICA Farmville, they are no longer subject to the conditions at the facility and do not have a live case or controversy for declaratory and injunctive relief as to the conditions of confinement at ICA Farmville. Therefore, this Court should dismiss their claims against Federal Defendants specifically for lack of subject matter jurisdiction.

Second, Claim V of Plaintiffs' First Amended Complaint—Plaintiffs' APA claim—should be dismissed in its entirety. As an initial matter, Plaintiffs' APA claim is not cognizable and the entirety of Claim V should be dismissed for lack of subject matter jurisdiction. Under its own terms, the APA only authorizes suit to challenge "final agency action," 5 U.S.C. § 704, defined as

---

[2] Plaintiff Bazerashvili's release was done in compliance with the nationwide injunction from *Fraihat v. ICE*, 19-cv-01546 (C.D. Cal.), which has directed ICE to release medically at risk individuals since the outbreak of COVID-19 after evaluating their immigration history, criminal record, potential threat to public safety, flight risk, and national security concerns.

"circumscribed, discrete agency actions"; it does not, however, allow for "broad programmatic attack[s]," because they do not challenge "agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62, 64 (2004). Consequently, the APA limits judicial review to discrete agency actions and precludes APA claims that seek wide-ranging relief subject to continued oversight by a court. This limit is logical: it ensures that courts do not become mired in day-to-day managerial oversight of agency operations.

Plaintiffs' APA claim would require this Court to contravene this limitation. While Plaintiffs bring suit against Federal Defendants for violating the PBNDS, they are not seeking to challenge a discrete violation of those standards or to compel Federal Defendants to reverse or implement a simple "on-off" decision that would satisfy the APA's requirement of discrete agency action. Instead, Plaintiffs are seeking to challenge the manner of Federal Defendants' compliance with the PBNDS and to have this Court supervise that compliance for the foreseeable future. *See, e.g.*, Am. Compl. p. 112 (praying that the Court "[r]etain jurisdiction and monitor Defendants' compliance with the above requirements by ordering Defendants to regularly update the Court of its progress implementing the Court's order"). This Court and the Fourth Circuit have recognized that such a challenge is foreclosed under the APA. *See City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) ("Courts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials. We are woefully ill-suited, however, to adjudicate generalized grievances asking us to improve an agency's performance or operations."); *Orbital ATK, Inc. v. Walker*, 2017 WL 2982010, at *5 (E.D. Va. July 12, 2017) (Brinkema, J.) (noting that with respect to the APA "the Supreme Court has expressly excluded claims requesting 'wholesale improvement of [a] program' from judicial review because a program is not a discrete agency action") (citation omitted).

3

However, assuming *arguendo* that Plaintiffs have met the threshold for challenging final agency action, Plaintiffs still do not have a cognizable APA claim under the doctrine set out in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (the "*Accardi* doctrine").  Plaintiffs' APA claim is premised on the theory that the *Accardi* doctrine provides the basis for this suit because "an agency and agency officials are required to follow their own policies." Am. Compl. ¶ 468.  But Plaintiffs do not have a cognizable *Accardi* claim because the *Accardi* doctrine has traditionally been applied in instances involving "an agency's failure to afford an individual *procedural* safeguards required under its own regulations."  *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) (emphasis added).  Courts have held that claims under the *Accardi* doctrine, much like the requirement of final agency action, provide relief where there are discrete failures by an agency to abide by its own rules or regulations that aim to protect procedural due process rights.  By contrast, Plaintiffs' *Accardi* claim is seeking to challenge the manner of Federal Defendants' substantive compliance with the PBNDS rather than to enforce a discrete right in an agency's rules or regulations.  *Accardi* does not stretch this far.  This is because "*Accardi* is rooted . . . in notions of procedural due process" and "[i]t is not readily apparent that . . . substantive guidelines on how ICE should operate its detention facilities, fall[] 'within the ambit of those agency actions to which the [*Accardi*] doctrine may attach.'"  *C.G.B. v. Wolf*, 2020 WL 2935111 at *34 (D.D.C. June 2, 2020) (citation omitted).  As such, courts have concluded that "because *Accardi* does not create substantive rights, [plaintiffs] cannot rely on the APA to enforce the government's adherence to CDC guidelines or its own internal guidance [on how to handle the COVID-19 crisis]."  *D.A.M. v. Barr*, 2020 WL 4218003, at *13 (D.D.C. July 23, 2020).

Because Plaintiffs' APA claim does not challenge final agency action and/or does not fit within the ambit of the *Accardi* doctrine this Court should dismiss Claim V of the Complaint in its

entirely as well as dismiss all of Plaintiffs Linares Hernandez and Bazerashvili's claims against

Federal Defendants as moot.

## FACTUAL ALLEGATIONS

Plaintiffs filed this suit on July 21, 2020 and subsequently filed a First Amended Complaint

on October 19, 2020.  *See* ECF Nos. 1, 123.  Plaintiffs are fourteen foreign nationals[3] detained at

one point or another at ICA Farmville during the pendency of their removal proceedings.  *See* Am.

Compl. ¶¶ 13-27.  They challenge their conditions of confinement at ICA Farmville as a result of the

increased prevalence of COVID-19 among detainees at the facility that occurred in July 2020.  *See*

Am. Compl. ¶ 63.  Specifically, Plaintiffs allege that their conditions and various measures taken by

Federal Defendants in regards to ICA Farmville violate their right to substantive due process under

the Fifth Amendment of the United States Constitution and violate the APA.  *See* Am. Compl.

¶¶ 398-412, 465-476.  As relevant to the motion here, Plaintiffs assert that Federal Defendants have

violated the APA because Federal Defendants' actions have not complied with their own policies,

the PBNDS—ICE's national detention standards regarding detainees' health and food needs, among

others, which Plaintiffs assert also incorporate CDC guidelines for the prevention and control of

infectious diseases.  Am. Compl. ¶¶ 339-397, 472-474.

In particular, Plaintiffs assert that Federal Defendants have violated the PBNDS by not fully

complying with its various standards.  They allege that Federal Defendants have not complied with

---

[3] Plaintiffs' Amended Complaint added a number of individuals as Plaintiffs and raised additional claims as to the other defendants, including claims under state tort law and 42 U.S.C. § 1983 for compensatory damages.  However, from the face of the pleading, only ten of the fourteen plaintiffs assert Claims I and V as to Federal Defendants.  Those Plaintiffs include:  Christian Alberto Santos Garcia, Santos Salvador Bolanos, Marco Antonio Miranda Sanchez, Melvin Ivan Velasquez Orellana, Olaitan Michael Olaniyi, Shawn Houslin, Jerbin Ivan Garcia Garcia, Jorge Alexander Rivera Rodriguez, Jose Linares Hernandez, and Vano Bazerashvili.  Am. Compl. ¶¶ 465-476.  The remaining four plaintiffs—who have been released from ICA Farmville—do not assert an APA claim against Federal Defendants from the face of the Complaint.

the standard for medical care by failing to ensure that ICA Farmville conducts adequate testing for COVID-19, failing to implement sufficient precautions against a COVID-19 outbreak, failing to provide appropriate treatment and isolation, and failing to provide appropriate communication assistance to detainees for medical visits.  Am. Compl. ¶¶ 343-355.  They allege that Federal Defendants have failed to comply with the standard for food services by not ensuring that Plaintiffs are being served food that is sanitary or nutritious.  Am. Compl. ¶¶ 356-362.  And Plaintiffs allege that Federal Defendants have failed to comply with CDC guidelines and recommendations for the prevention and control of COVID-19, incorporated by reference into the PBNDS, because Plaintiffs claim that:  detainees in the facility are not appropriately distanced from one another; detainees are not provided prompt medical treatment; staff are not properly assigned in the facility; COVID-19 prevention practices for the staff are inadequate; the facility is not sufficiently cleaned; the facility does not have sufficient personal protective equipment ("PPE"); and Federal Defendants have transferred detainees into the facility without testing, quarantining, or screening them.  Am. Comp. ¶¶ 363-397.  As part of their proposed relief on the APA claim and their other claims, Plaintiffs seek certain programmatic relief, namely that Federal Defendants create and submit to the Court a plan proposing further efforts to mitigate against the spread of COVID-19 at the facility, to provide medical care regarding COVID-19, and to improve the quality of the food at the facility.  *See* Am. Compl. pp. 111-112.  That plan is to be submitted to the Court, subsequently implemented, and then Federal Defendants' compliance with said plan is to be monitored by the Court.  *See* Am. Compl. pp. 112-113; *see also* ECF No. 68-2.  Relatedly, Plaintiffs' Amended Complaint requests that the Court "[i]ssue an injunction ordering Federal Defendants to immediately comply with the PBNDS Medical Standards, Food Service Standards, and CDC Guidance as incorporated into the PBNDS."  Am. Compl. p. 113.

6

Since the filing of the Amended Complaint, Plaintiff Linares Hernandez was removed to Guatemala on October 23, 2020 and is no longer in custody at ICA Farmville. *See* Ex. 1. Plaintiff Bazerashvili was subsequently released from custody on November 16, 2020, pursuant to a *Fraihat* custody review. *See* Ex. 2.

## LEGAL STANDARD

### A.      Rule 12(b)(1).

A court must dismiss any case if it lacks subject matter jurisdiction over the claims. Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject matter jurisdiction in a particular matter. *See, e.g., Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003), *aff'd*, 90 F. App'x 60 (4th Cir. 2004). The plaintiff has the burden of establishing subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### B.      Rule 12(b)(6).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, the Court should "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor." *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). The Court, however, is not required to accept legal conclusions as true. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

## ARGUMENT

### I.     THE CLAIMS OF PLAINTIFFS LINARES HERNANDEZ AND BAZERASHVILI SHOULD BE DISMISSED AS MOOT.

The claims by Plaintiffs Jose Linares Hernandez and Vano Bazerashvili as to Federal Defendants must be dismissed for lack of subject matter jurisdiction because they are now moot. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). "Stated in its simplest form, 'a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Recognizing this general principle, courts have repeatedly held that "[a] [detainee]'s transfer or release from a particular prison generally moots his claims for injunctive and declaratory relief with respect to his conditions of confinement there."  *Nicholson v. Boakye*, 2017 WL 3331775, at *2 (W.D. Va. Aug. 4, 2017).  In fact, "[u]nder well-established Fourth Circuit precedent, the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment."  *Taylor v. Riverside Reg'l Jail Auth.*, 2011 WL 6024499, at *4 (E.D. Va. Dec. 2, 2011) (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007)).

Here, Plaintiffs Linares Hernandez and Bazerashvili bring Claims I and V against Federal Defendants, and those claims seek declaratory and injunctive relief as to the conditions of confinement at ICA Farvmille.  However, the claims of Plaintiffs Linares Hernandez and Bazerashvili are now moot because they are no longer at ICA Farmville—the facility whose conditions they challenge in the instant lawsuit.  Plaintiff Linares Hernandez was removed to

Guatemala upon a final order of removal on October 23, 2020.  *See* Ex. 1; *see also* ECF No. 127 at 2.

And Plaintiff Bazerashvili was released from ICA Farmville as a medically at risk individual on

November 16, 2020.  *See* Ex. 2.  Because these Plaintiffs are no longer in ICA Farmville and no

longer subject to any conditions therein, they no longer have a live case or controversy to seek

declaratory and injunctive relief from the conditions of confinement at ICA Farmville.  Accordingly,

the claims brought by Plaintiffs Linares Hernandez and Bazerashvili as to Federal Defendants

should be dismissed.

## II.  PLAINTIFFS' CLAIM V UNDER THE APA DOES NOT CHALLENGE FINAL AGENCY ACTION.

Separately, Claim V of the Complaint should be dismissed in its entirety for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1).  Although the APA provides a right of action to set

aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," 5 U.S.C. § 706(2)(A), it also provides review of only "[a]gency action made

reviewable by statute and final agency action for which there is no other adequate remedy in a

court."  5 U.S.C. § 704.  In short, there must be "final agency action" for suit under the APA.  *See*

*Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (noting that the APA provides review "as long as the

action is a 'final agency action for which there is no other adequate remedy in a court'").  Whether or

not there is "reviewable final agency action under the APA" is, in turn, a question of "subject matter

jurisdiction" under Rule 12(b)(1).  *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.*, 313 F.3d

852, 857 (4th Cir. 2002).

"The term 'action' as used in the APA is a term of art that does not include all conduct" on

the part of the government.  *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193

(4th Cir. 2013); *see also Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948) ("The difficulty with

the appellant company's position is that the Administrative Procedure Act does not provide review

for everything done by an agency.").  That is, the requirement of "agency action," under 5 U.S.C. §

704,  specifically applies to "circumscribed, discrete agency action," which can be the basis for suit

under the APA, but this term excludes on-going agency action or programs and thereby does not

allow for APA claims that are "broad programmatic attack[s]."  *Norton*, 542 U.S. at 62, 64.  Thus,

"[w]hile a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final

agency action' under the APA."  *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).  In other

words, plaintiffs cannot bring suit under the APA when they do not challenge a discrete measure but

rather seek "wholesale improvement of [a] program by court decree."  *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 891 (1990); *see also Norton*, 542 U.S. at 64 (stating that the APA's "limitation to discrete

agency action precludes the kind of broad programmatic attack [to an agency program]").  In fact,

"[t]he obvious inability for a court to function in such a day-to-day managerial role over agency

operations is precisely the reason why the APA limits judicial review to discrete agency actions."

*Vill. of Bald Head Island*, 714 F.3d at 194.  Accordingly, the Fourth Circuit has recognized that

"[w]hen challenging agency action—whether it be a particular action or a failure to act altogether—

the plaintiff must . . . identify specific and discrete governmental conduct, rather than launch a

'broad programmatic attack' on the government's operations."  *City of New York*, 913 F.3d at 431; *see*

*also Stogsdill v. Azar*, 765 F. App'x 873, 878 (4th Cir. 2019) (noting the APA's basic presumption of

judicial review "does not extend to an agency's continuing operations or to 'broad programmatic

attack[s] on the government's operation'") (citation omitted).

     Here, Plaintiffs' challenge to Federal Defendants' compliance with the PBNDS is not

cognizable "final agency action" that can be challenged under the APA.  Plaintiffs do not seek to

enjoin a discrete decision not to follow the PBNDS wholesale or any other specific decision.

Rather, they seek to force Federal Defendants into following these standards as Plaintiffs see fit and

to force Federal Defendants to institute systemic measures whereby Federal Defendants will follow

Plaintiffs' reading of the PBNDS and be habitually monitored in their compliance.  *See* Am. Compl.

pp. 112-113.  This is just the sort of "programmatic attack" that the Supreme Court has rejected as a

basis for suit under the APA.  Indeed, the Fourth Circuit has expressly held that this type of claim is

improper because, under the APA, courts may "review only those acts that are specific enough to

avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial

judgments for those of the executive branch, and substantial enough to prevent an incursion into

internal agency management."  *City of New York*, 913 F.3d at 432.

Decisions from the Fourth Circuit and this Court are squarely on point as to why Plaintiffs'

APA claim does not challenge final agency action.  The Fourth Circuit's decision in *City of New York*,

for one, is directly applicable.  There, plaintiffs filed suit against the Department of Defense seeking

to force its "more thorough compliance" with a background check system whereby the National

Instant Criminal Background Check System Improvement Amendments Act of 2007 or NIAA

imposed an affirmative duty on agencies to report disqualifying information to be used in

background checks for firearms sales.  *Id.* at 427, 429.  The district court dismissed that suit for lack

of a final agency action, and the Fourth Circuit agreed.  The Fourth Circuit correctly concluded that

plaintiffs brought a "broad programmatic attack" and did not challenge a "discrete agency action"

because plaintiffs sought to enforce the agency's compliance with its statutory mandate to their

liking and have a court "supervise [the] agency's compliance with [the] broad statutory mandate of

the NIAA."  *Id.* at 433-34 (quotation omitted).  Plaintiffs thus were not challenging final agency

action as they were not focused on a "discrete action" but rather seeking to implement defendants'

"wholesale compliance with an entire administrative system."  *Id.* at 433, 435.  In *City of New York,* as

here, the essence of the plaintiffs' challenge went directly against the "APA's discreteness

11

requirement [which] exists to avoid placing the courts in th[e] exact position" of having "to function in such a day-to-day managerial role over agency operations." *Id.* at 434.

Likewise, this Court has recognized that programmatic challenges are not cognizable under the APA and must be dismissed for lack of subject matter jurisdiction. *See Orbital*, 2017 WL 2982010, at *7. In *Orbital*, plaintiffs brought suit against the Defense Advanced Research Projects Agency ("DARPA") and its acting director alleging that a program that DARPA had instituted violated a presidential policy directive and therefore violated the APA. *See id.* at *1. This Court dismissed that action for lack of subject matter jurisdiction, noting that plaintiffs were challenging the implementation of an entire program, rather than a discrete agency action. *Id.* at *6. And, as the Fourth Circuit did in *City of New York*, the Court rejected the argument that plaintiffs' "programmatic challenge" could otherwise be converted into a justiciable suit "by pointing to one or more component contracts or agreements" that were part of that challenge. *Id.* at *7.

More recently, other courts have rejected APA claims—like those of Plaintiffs—for not challenging final agency action where the crux of the claims was to have ICE enforce its standards to the plaintiffs' liking amidst COVID-19. In *C.G.B. v. Wolf*, the plaintiffs alleged that the federal defendants violated the APA by failing to abide by requirements set out in a document, entitled the COVID-19 Pandemic Response Requirements ("PRR"), which includes more definitive measures designed to prevent the spread of COVID-19 in detention facilities. 2020 WL 2935111 at *2. The court found that the plaintiffs' "APA claim [wa]s premised on ICE's alleged failure to implement the PRR in the various detention facilities at which [p]laintiffs are housed," but that this was not "final agency action" as "allegations of 'general deficiencies in [ICE's] compliance' with the PRR in its day-to-day operations of detention facilities across the country 'lack the specificity requisite for agency action.'" *Id.* at *33 (citation omitted). As a result, the plaintiffs were seeking to mount a

programmatic challenge, which was bolstered by the point that the "[p]laintiffs [did] not identify any discrete final agency decision not to implement the PRR." *Id.*

Plaintiffs' APA claim is a programmatic challenge much like those rejected in the aforementioned decisions whereby Plaintiffs are seeking the Federal Defendants' "more thorough compliance" with the PBNDS, as Plaintiffs deem proper. *City of New York,* 913 F.3d at 427. That point is abundantly clear by looking at Plaintiffs' requested relief, which does not seek to invalidate or enforce a specific and discrete agency action—instead it seeks a broad "reform [of] conditions" at ICA Farmville and to have the Court "[r]etain jurisdiction and monitor Defendants' compliance." Am. Compl. pp. 111, 113. Even Plaintiffs' relief of having the court "order[] Federal Defendants to immediately comply with the PBNDS Medical Standards, Food Service Standards, and CDC Guidance" is not a straightforward request for an on-off decision but would instead entail micromanaging Federal Defendants' operational efforts. Plaintiffs' APA claim would thus require the Court to "supervise an agency's compliance" when "[t]he APA's discreteness requirement exists to avoid placing the courts in this exact position. *City of New York*, 913 F.3d at 433-34. But this Court cannot do that.

Plaintiffs may seek to justify their APA claim as being grounded in Federal Defendants' alleged "multiple discrete," Am. Compl. ¶¶ 472, 474, failures to follow the PBNDS standards, but the Fourth Circuit's decision in *City of New York* also recognizes that a series of individual violations cannot be the basis for a claim that seeks broad relief under the APA. *See id.* at 433.[4] There, the

---

[4] Even assuming, without conceding, that this argument is persuasive, the PBNDS directs ICE detention facilities to maintain plans to address the management of infectious and communicable diseases and to work in coordination with public health authorities and, in many provisions, sets out general standards rather than finite mandates. *See* ICE, *Performance-Based National Detention Standards* 261 (2011), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf. Plaintiffs' Amended Complaint sets out a number of standards that allegedly have been violated but even then the relief Plaintiffs seek for these alleged violations is programmatic underscoring that

Fourth Circuit rejected the notion that the plaintiffs' claims were "simply an aggregation of many small claims, each one seeking to compel the individual reports required by the NIAA," making the alleged violations of the NIAA "pervasive." *Id.* at 433-34. The Fourth Circuit did not countenance this argument, holding that "any limit on programmatic assessment would be rendered meaningless if such an argument prevailed." *Id.* at 433.

In the end, Plaintiffs' APA claim is unlike the kind of cognizable APA claims that challenge discrete agency action, such as a failure to take a specific action required by statute or a single decision to withdraw a particular program or benefit wholesale. *See, e.g.*, *Dep't of Homeland Security v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1905, 1909 (2020) (challenging the particular decision to withdraw the Deferred Action for Childhood Arrivals program); *South Carolina v. United States*, 907 F.3d 742, 755 (4th Cir. 2018) (challenging the Department of Energy's failure to achieve a specific production objective to remove plutonium from South Carolina imposed explicitly by statute); *Hyatt v. U.S. Patent & Trademark Office*, 110 F. Supp. 3d 644, 651 (E.D. Va. 2015) ("[P]laintiff here seeks to compel essentially a yes or a no from the PTO on his patent applications, a discrete task quite unlike managing public lands, planning a reclamation project, or implementing the Fair Housing Act."). Rather, Plaintiffs' APA claim takes issue with the Federal Defendants' manner of compliance with the PBNDS at ICA Farmville. Because such a claim does not challenge final agency action and would otherwise draw this Court into supervising Federal Defendants' compliance with their own

---

Plaintiffs' APA claim does not meet the requirement of challenging final agency action. At its most discrete, the Amended Complaint seeks to maintain the existing injunction against transfers into ICA Farmville, Am. Compl. p. 113 based on Plaintiffs' allegations that prior transfers violated the CDC Guidance, *see* Am. Compl. ¶¶ 364-372. But even then Plaintiffs' requested relief is programmatic and highlights that their APA claim does not challenge final agency action. Rather than seeking discrete relief with respect to transfers, Plaintiffs ask that the injunction be maintained, somewhat amorphously, until "Defendants can demonstrate that such transfer will not endanger Plaintiffs' or others' health and abides by CDC guidelines." Am. Compl. pp. 112-113.

flexible standards, the Court should dismiss Plaintiffs' APA claim for lack of subject matter jurisdiction.

### III.    PLAINTIFFS' CLAIM V UNDER THE APA IS NOT COGNIZABLE UNDER *ACCARDI*.

For the reasons previously discussed, Plaintiffs do not have a cognizable APA claim because they are not challenging final agency action.  Because the requirement of a final agency action is a jurisdictional prerequisite to filing suit under the APA in this Circuit, *Flue-Cured Tobacco Coop. Stabilization Corp.*, 313 F.3d at 857, Plaintiffs' *Accardi* claim, even if cognizable, would fail for not meeting this jurisdictional prerequisite.  In fact, other courts have recognized that *Accardi* claims, if properly brought pursuant to the APA, must meet this requirement of final agency action.  *See C.G.B.*, 2020 WL 2935111, at *32 (finding that plaintiffs' "*Accardi* claims are nonetheless barred because they are not based on final agency action" under the APA).  But assuming without conceding that Plaintiffs meet this jurisdictional threshold, their APA claim must be dismissed under Rule 12(b)(6) because Plaintiffs do not have a claim under the *Accardi* doctrine.[5]

Much like with the overall flaw of Plaintiffs' challenge to final agency action, Plaintiffs' *Accardi* claim fails because it challenges Federal Defendants' operational compliance with the PBNDS and seeks to craft a wholly novel sort of claim under *Accardi*.[6]  *Accardi* itself did not go this

---

[5] Federal Defendants separately contend that they have not violated the PBNDS, but because any argument on this ground would require going outside of the pleadings on a Rule 12(b)(6) motion, Federal Defendants do not move to dismiss on this basis.  In the event that this Court finds that Plaintiffs' APA claim can go forward, Federal Defendants will reserve this argument for summary judgment.

[6] Plaintiffs separately seem to suggest another case as the basis for their *Accardi* claim when asserting that "a fundamental principle of administrative law is that an 'agency must follow its own rules.'" Am. Compl. ¶ 476 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 549 (2009) (Breyer, J. dissenting)).  However, *Fox* did not deal with the *Accardi* doctrine but dealt with the requirement that agencies must provide a sufficient explanation for final agency action under the standard set out under *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29 (1983), particularly when an agency changes course in its decisionmaking.  *Fox* specifically dealt

far or even contemplate the kind of challenge that Plaintiffs seek to bring.  A brief review of the

origins of the *Accardi* doctrine underscores this point.  *Accardi* involved a petitioner who applied to

the Board of Immigration Appeals for the suspension of his deportation under the then-operative

Immigration Act.  347 U.S. at 261-263.  However, before the Board could act on petitioner's

application, the Attorney General of the United States released a confidential list of "unsavory

characters" whom he believed should be deported and petitioner was on that list; the Board then

subsequently denied petitioner's application.  *Id.* at 263-264.  In federal court, the petitioner asserted

in habeas that the Attorney General's list constituted prejudgment of petitioner's application, that

this list had resulted in the denial of his application, and that this denial consequently violated

specific federal regulations that required the Board to exercise its own discretion, independent of the

Attorney General, in considering applications.  *Id.* at 266.  On review, the Supreme Court

"object[ed] to the Board's alleged failure to exercise its own discretion, contrary to existing valid

regulations" and reversed for subsequent consideration of petitioner's application in order to

provide him with the "due process required by the regulations in such proceedings."  *Id.* at 266, 268.

In short, the Supreme Court in *Accardi* recognized that an agency acted unlawfully when it failed to

follow a discrete command in its own regulations in considering petitioner's application, thereby

frustrating procedural due process.  *See United States v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969)

("The failure of the Board and of the Department of Justice to follow their own established

procedures was held a violation of due process.").

Subsequent caselaw under *Accardi* has similarly recognized that discrete failures by agencies

to follow their own established regulations, rules, and procedures may be set aside when they bear

---

whether the Federal Communications Commission provided such a sufficient explanation when it
changed how it would enforce its so-called indecency ban.  *See id.* at 513-516.  For the reasons
mentioned herein, Plaintiffs do not challenge final agency action.

on an individual's right to a fair hearing, as was the case in *Accardi*. *But see Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) ("To be sure, the cases are not uniform in requiring that every time an agency ignores its own regulation its acts must subsequently be set aside."); *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 64 (D.D.C. 1998) ("[T]here is no presumption that every general guideline is a binding rule. Due regard must be given to an agency's legitimate interest in setting forth general goals and procedures without having a court transmogrify those guidelines into binding norms.") (quotation omitted). In *Service v. Dulles*, 354 U.S. 363, 388-389 (1957), the Supreme Court once again applied the *Accardi* doctrine to set aside the discharge of a State Department employee by the Secretary of State. The Court concluded that the Secretary violated agency regulations governing the discharge of employees by issuing his own termination decision and by not making a judgment based on the evidence in the case. *See id.* at 388-389. In *Heffner*, the Fourth Circuit then applied the doctrine to reverse a defendant's conviction for tax fraud after an IRS agent failed to follow regulations requiring the agent to notify the defendant that he was suspected of tax fraud and regulations that required IRS agents to comply with the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). 420 F.2d at 811-812. And since *Accardi*, other courts have continued to recognize "[t]he *Accardi* doctrine [as] a 'judicially-evolved rule ensuring fairness in administrative proceedings' [which requires] 'that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.'" *Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) (quoting *Montilla*, 926 F.2d at 166); *see also Lopez v. FAA*, 318 F.3d 242, 246 (D.C. Cir. 2003) (holding that *Accardi* "require[s] agencies to abide by internal, procedural regulations").

     A common thread throughout these decisions and the body of caselaw around the *Accardi* doctrine is that these cases involved claims for discrete failures by agencies to follow their rules or regulations and involved instances mirroring the procedural due process underpinnings of *Accardi*

itself.  What these cases did not involve, however, were claims under *Accardi* to seek broad structural remedies for alleged substantive violations.  Indeed, such a claim would violate the requirement of final agency action as previously mentioned and the general principle in administrative law that a court is "not to substitute its judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  Plaintiffs' *Accardi* claim does just that.  Plaintiffs assert that the agency has violated its own guidelines but rather than having agency action set aside or seeking a discrete remedy, Plaintiffs seek programmatic changes to the operation of ICA Farmville.  *Accardi* does not stretch this far, and Federal Defendants are not aware of any decision from the Supreme Court, the Fourth Circuit, or this Court recognizing such a claim seemingly untethered from the foundations of *Accardi*.

Unsurprisingly, other courts have rejected the sort of COVID-19, conditions-of-confinement-related *Accardi* claim that Plaintiffs bring here.  In *C.G.B.*, the district court, as previously discussed, addressed plaintiffs' claim that federal defendants violated the APA by failing to abide by the requirements in the PRR, which, like the instant APA claim, was "based on the *Accardi* doctrine."  2020 WL 2935111, at *23.  The *C.G.B.* court rejected plaintiffs' APA claim for lack of final agency action but in the alternative also rejected the APA claim because "it [was] far from clear that the PRR are the type of rules or regulations that can be enforced through the *Accardi* doctrine."  *Id.* at *34.  The court recognized that plaintiffs' claim was drastically different from the cases applying *Accardi* as plaintiffs sought much wide-ranging relief and were arguing that the PRR "create[d] substantive due process rights," a far cry from the procedural due process origins of *Accardi*.  *Id.* at *34.[7]  Thus, the *C.G.B.* court held that the plaintiffs could not raise an *Accardi* claim

---

[7] The *C.G.B.* decision specifically noted this point in contrasting the challenge before it from a prior District of Columbia case, *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336, 341 (D.D.C. 2018), which recognized an *Accardi* claim seeking to compel ICE to follow discrete procedural requirements for assessing eligibility for release of asylum seekers.

under the APA.  *Id.*; *see also D.A.M.*, 2020 WL 4218003, at *13 (holding that petitioners' claim for an

expansive remedy based on the CDC guidelines "f[e]ll outside the *Accardi* doctrine").

Another recent case, *A.S.M. v. Warden, Stewart Cty. Det. Ctr.*, 2020 WL 2988307 (M.D. Ga.

June 3, 2020), rejected an almost identical claim to the one that Plaintiffs assert here.  In *A.S.M.*,

immigration detainees at another detention facility brought suit for their conditions of confinement

in light of COVID-19 seeking as relief either immediate release or that respondents "be ordered to

institute measures that reasonably protect [petitioners] from the risk of infection with the

coronavirus."  *Id.* at *1.  Among other claims, petitioners asserted an *Accardi* claim alleging that

respondents failed to comply with CDC guidance as referenced in the PBNDS.  *Id.* at *8.  The

*A.S.M.* court, however, rejected this *Accardi* claim outright holding that "[p]etitioners [sought] to

unmoor *Accardi* from its analytical anchor—due process" and "[sought] to convert a constitutional

conditions of confinement claim into a negligence-type action, using operating policies for

maintaining safe and healthy facilities as the standard of care."  *Id.*  Finding no circuit court opinion

or any substantial body caselaw applying *Accardi* to such a situation,[8] the *A.S.M.* court "decline[d]

[p]etitioners' invitation to extend *Accardi*, particularly given that it would have so little company in

doing so."  *Id.*; *see also id.* at *9 ("Other *Accardi* type cases in this Circuit address situations in which

an agency failed to follow certain formally adopted procedures that are designed for the benefit of

persons relying upon them.  The Guidance here has nothing to do with this type of procedural

process.").  The *A.S.M.* court also recognized the potential consequences of extending *Accardi* to

---

[8] The *A.S.M.* court "acknowledge[d] that one district judge . . . ha[d] recognized an *Accardi* claim
under similar circumstances."  *Id.* at *8 n.5 (citing *Gayle v. Meade*, 2020 WL 2086482, at *6 (S.D. Fla.
Apr. 30, 2020), *order clarified*, 2020 WL 2203576 (S.D. Fla. May 2, 2020)).  However, that decision,
*Gayle*, did not wrestle with whether the claim before it fit within the line of *Accardi* caselaw and has
not been followed by subsequent cases in the Southern District of Florida or elsewhere to Federal
Defendants' knowledge.  *See A.S.M.*, 2020 WL 2988307, at *8 n.5 (citing *Matos v. Lopez Vega*, 2020
WL 2298775, at *12 (S.D. Fla. May 6, 2020)).

petitioners' structural claim regarding a detention facility's compliance or alleged noncompliance with the PBNDS or CDC guidance.  Specifically, the court found that this extension "would establish a standard for detention centers and prisons to meet that is far more rigorous than well accepted constitutional requirements" so that "[e]very federal detention facility and prison in the country would be subjected to an *Accardi* claim any time they failed to follow an operational procedure."  *Id.* at *9.

The same is true of Plaintiffs' claim here.  It does not fit within *Accardi* or subsequent caselaw following *Accardi*, and it would extend that doctrine so as to require Federal Defendants to provide broad, programmatic relief regarding their own flexible operational procedures, the PBNDS. As such, even if Plaintiffs' APA claim meets the jurisdictional prerequisite of final agency action, they do not have a cognizable APA claim under the *Accardi* doctrine.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that the Court dismiss the claims of Plaintiffs Linares Hernandez and Bazerashvili against Federal Defendants as moot and dismiss Claim V in its entirety.

Dated: November 16, 2020

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:   /s/_____
YURI S. FUCHS
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3872
Fax:   (703) 299-3983
Email:  yuri.fuchs@usdoj.gov

20

*Counsel for Federal Defendants*

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this 16th day of November, 2020, I have electronically filed the foregoing using the CM/ECF system.

_____/s/_____
Yuri S. Fuchs
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3872
Fax: (703) 299-3983
Email: yuri.fuchs@usdoj.gov
*Counsel for Federal Defendants*