**Appendix A**

**Subpoena to the Town of Farmville**

DEFINITIONS

The following definitions shall apply:

1. "You" means the third-parties responding to these subpoena requests.

2. "Town of Farmville" means the Town of Farmville, inclusive of any and all agencies, offices, advisory committees, task forces, or third-party contractors, and their officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff.

3. "Town Council" means the Farmville Town Council, inclusive of any and all agencies, offices, advisory committees, task forces, or third-party contractors, and their officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff.

4. "FDC" means the Farmville Detention Center, 508 Waterworks Rd., Farmville, VA 23901, and all individuals employed thereby or therein.

5. "ICA" means Defendant Immigration Centers of America-Farmville, LLC, and its officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff.

6. "Armor" means Defendant Armor Correctional Health Services, Inc., and its officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff.

7. "ICE" means Defendant U.S. Immigration and Customs Enforcement and its officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff, as well as its parent agency, U.S. Department of Homeland Security, inclusive of any and all agencies, offices, advisory committees, task forces, third-party contractors, or government

funded programs under its purview, and its officers, directors, employees, agents, representatives, attorneys, contractors, or funded program staff.

    8.    "IGSA" means Intergovernmental Service Agreement.

## DEPOSITION TOPICS

1. The negotiation and approval of agreements between the Town of Farmville and ICE to house ICE detainees, including:

   a. The history of the negotiations that led to agreements with the Town of Farmville and ICE to house ICE detainees.

   b. The bidding or application process for the IGSA that ICE awarded to the Town of Farmville, and the involvement of ICA (or, if prior to the creation of ICA, the individuals who founded or funded ICA) in the procurement of the IGSA.

   c. The Town of Farmville's understanding of the reasons why ICE awarded the IGSA to the Town of Farmville.

   d. The process by which modifications to the IGSA with ICE are made and who is involved.

   e. The involvement of the Commonwealth of Virginia officials, including the former Virginia Attorney General Ken Cuccinelli, in negotiating agreements between ICE and the Town of Farmville, including modifications to the IGSA.

2. The negotiation and approval of agreements between the Town of Farmville and ICA to operate the FDC, including:

   a. The history of the negotiations that led to agreements with the Town of Farmville to operate the FDC.

b. The Town of Farmville's decision to select ICA as its subcontractor to operate FDC, including the bidding, application, or approval process, if any.

c. The Town of Farmville's understanding of the role of ICA in the transaction; specifically: why the Town of Farmville contracted with ICA to house ICE detainees, and why ICE contracted with the Town of Farmville rather than directly with ICA to house ICE detainees.

d. How and when the Town of Farmville first connected with ICA (or, if prior to the creation of ICA, the individuals who founded or funded ICA), with respect to the transaction, including the nature and substance of initial discussions regarding providing services to ICE and the identities of the individuals involved in the initial discussions.

3. The planning for, and the development and construction of, the FDC, including:

a. The ways in which the Town of Farmville was involved in the planning, development, and construction of the FDC.

b. The sources of funding for the FDC and the terms under which the funding was provided.

c. The permits or approvals required to build and operate the FDC and how the permits were obtained.

d. Communications between the Town of Farmville and ICA regarding the planning, development, and construction of the FDC.

e. Communications between the Town of Farmville and the Commonwealth of Virginia regarding the planning, development, and construction of the FDC.

  f. The Town of Farmville's understanding of ICA's acquisition of the land for the FDC.

4. Contracts and agreements with respect to FDC formed between the Town of Farmville and (i) ICA, (ii) Armor, and (iii) ICE; including changes or amendments; and policies, procedures, and/or practices regarding contract monitoring and oversight.

5. The involvement of the Town of Farmville in the operation, management, and administration of the FDC, dating back to the construction of the FDC through the present date, including:

  a. Whether the Town of Farmville created a commission or other body to oversee the FDC, and, if so, the activities of the commission or body, the dates of its existence, and the identities of the members.

  b. The occasions in which an official or employee of the Town of Farmville visited the FDC in his or her official capacity, and the purpose and outcome, if any, of the visits.

  c. The extent to which the Town of Farmville communicates with ICA regarding the operation, management, and administration of the FDC, and the extent to which the Town of Farmville is included in communication between ICA and ICE regarding the operation, management, and administration of the FDC.

  d. The role that the Town of Farmville plays in providing licensing and/or training for the FDC or its employees.

  e. The process by which ICA reports to the Town of Farmville on the operation, management, and administration of the FDC, including (i) the policies, procedures, and/or practices regarding reporting to or sharing information with

    the Town of Farmville, (ii) whether ICA continues to send a monthly report to the Town of Farmville, and, if not, when and why it stopped sending monthly reports to the Town of Farmville.

  f. The extent to which the Town of Farmville is authorized to inspect FDC.

  g. Whether the Town of Farmville has conducted or commissioned an inspection of the FDC, and, if so, the results of the inspection/s.

  h. The extent to which the results of ICE inspections of the FDC are shared with the Town of Farmville.

  i. The extent to which the Town of Farmville is notified of incidents occurring at the FDC or complaints regarding the operation, management, or administration of the FDC.

  j. Any actions the Town of Farmville has taken in response to any incident at or complaint regarding the FDC.

  k. The extent to which the Town of Farmville coordinates with ICA regarding emergency response planning.

  l. How often ICA or its representatives attend Town Council meetings; how often ICA or its representatives address the Town Council regarding the operation of FDC; and how often the representatives of the Town of Farmville otherwise meet with ICA or its representatives, without regard to whether such meetings are open to the public.

 6. The payment arrangements between the Town of Farmville, ICA, Armor, and ICE.

7. The involvement of the Town of Farmville in ICA's response to the COVID-19 pandemic with respect to the FDC, including:

   a. The extent to which the Town of Farmville communicated with ICA or its representatives regarding COVID-19 or the presence thereof within the FDC.

   b. The extent to which the Town of Farmville communicated with Armor or its representatives regarding COVID-19 or the presence thereof within the FDC

   c. Any instructions given by the Town of Farmville to ICA or Armor regarding COVID-19 or the presence thereof within the FDC.

   d. Any measures taken by the Town of Farmville with respect to the FDC in response to the COVID-19 pandemic.

Dated: March 16, 2021                                Respectfully submitted,

                                                     */s/Simon Sandoval-Moshenberg*

Joseph D. West (Va. Bar No. 16834)
David Debold (*pro hac vice*)
Naima L. Farrell (*pro hac vice*)
Thomas J. McCormac IV (*pro hac vice*)
Aaron Smith (*pro hac vice*)
Blair Watler (*pro hac vice*)
Katherine King (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel: 202-955-8551
jwest@gibsondunn.com
ddebold@gibsondunn.com
nfarrell@gibsondunn.com
asmith3@gibsondunn.com
tmccormac@gibsondunn.com
bwatler@gibsondunn.com
kking@gibsondunn.com

*Pro bono counsel for Plaintiff Christian Alberto Santos Garcia*

Simon Sandoval-Moshenberg (Va. Bar No. 77110)
Kristin Donovan (Va. Bar No. 92207)
Granville Warner (Va. Bar No. 24957)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: 703-778-3450
simon@justice4all.org
kristin@justice4all.org
cwarner@justice4all.org

Sirine Shebaya (*pro hac vice*)
Amber Qureshi (*pro hac vice*)
NATIONAL IMMIGRATION PROJECT OF THE
   NATIONAL LAWYERS GUILD
2201 Wisconsin Avenue, N.W., Suite 200
Washington, D.C. 20007
Tel: 617-227-9727
sirine@nipnlg.org
amber@nipnlg.org

*Pro bono counsel for Plaintiffs Santos Salvador Bolanos Hernandez, Gerson Amilcar Perez Garcia, Ismael Castillo Gutierrez, Didier Mbalivoto, Frank Souza Bauer, Marco Antonio Miranda Sanchez, Melvin Ivan Velasquez Orellana, Olaitan Michael Olaniyi, Shawn Houslin, Jerbin Ivan Garcia Garcia, Jorge Alexander Rivera Rodriguez, Jose Linares Hernandez, and Vano Bazerashvili*