**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| CHRISTIAN ALBERTO SANTOS GARCIA, *et al.*,<br><br>                    *Plaintiffs*,<br><br>          v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>                    *Defendants*. | Case No. 1:20-cv-00821 (LMB/JFA) |

**DECLARATION OF AMBER QURESHI IN SUPPORT OF
REQUEST FOR EXTENSION**

I, Amber Qureshi, declare and state as follows:

1.       My name is Amber Qureshi, and I am an attorney at the National Immigration Project of the National Lawyers Guild. I along with my colleagues and co-counsel, the Legal Aid Justice Center and Gibson, Dunn & Crutcher LLP, represent Plaintiffs in this matter.

2.       I am admitted to practice law in the State of Maryland, and I have been admitted *pro hac vice* in this matter.

3.       I have personal knowledge of the facts described below and would be willing to testify consistently with the facts asserted below.

4.       Plaintiffs served a third-party subpoena to testify, pursuant to Rules 30(b)(6) and 45, on the Town of Farmville on March 16, 2021. Dkt. No. 170.

5.       Plaintiffs deposed the Town of Farmville on May 11, 2021.

6.      Plaintiffs conducted a Rule 30(b)(6) deposition of Defendant U.S. Immigration and Customs Enforcement (ICE) on May 13, 2021. Plaintiffs are scheduled to conduct a Rule 30(b)(6) deposition of Defendant Immigration Centers of America-Farmville, LLC (ICA) on May 21, 2021.

7.      The Town of Farmville designated Dr. Christopher Scott Davis, the Town Manager of the Town of Farmville, to testify on its behalf.

8.      I conducted the questioning of Dr. Davis on behalf of Plaintiffs, in the presence of local counsel Simon Sandoval-Moshenberg and Kristin Donovan and counsel for Defendants.

9.      I also reviewed the rough transcript of the deposition prepared by the court reporter for this declaration.  The quotations of Dr. Davis herein are taken verbatim from the rough transcript of his deposition; the final transcript is not yet available from the court reporter.

10.      Dr. Davis testified that he has been the Town Manager for the Town of Farmville since February 2020. He stated that Mr. Gerald Spates was the Town Manager preceding him.

11.       Dr. Davis testified that prior to his role as Town Manager, he was the Assistant Town Manager for the Town of Farmville from October 2017 to August 2019, and then the Interim Town Manager for the Town of Farmville from August 2019 to February 2020. He stated that he has had no other roles within the Town of Farmville.

12.      Dr. Davis stated that to prepare for the deposition, he spoke with two attorneys at the law firm Harman Claytor Corrigan & Wellman, P.C. and a few of his staff members. He also stated that he kept the Mayor, the Town Council, and the Town attorneys aware of the dates of the deposition.

13.      I asked Dr. Davis about the obligations of the Town of Farmville under the Inter-Governmental Service Agreement (IGSA) between the Town and ICE—perhaps the most

important document in the case as it pertains to the jurisdictional issues under 42 U.S.C. § 1983—to which he responded "I have not fully reviewed the IGSA since it was before my time and depth."

14.    I asked Dr. Davis who approached the Town about the idea to hold immigration detainees in Farmville, Virginia. He stated that "it was a discussion between the Town Manager at that time and Mr. Harper." When I asked what the content of those communications were, he stated "I wasn't there." I then asked if other Town officials were involved in those communications, and he responded, "That I don't know. As I said, I have that information from word of mouth from both Mr. Spates and Mr. Harper at different times."

15.    I asked Dr. Davis if the Town of Farmville was in communication with the federal government about a new immigration detention facility in Farmville, Virginia prior to April 2007, when the Town Council officially approved the facility. He stated, "I don't know what the conversation was with the federal government."

16.    I asked Dr. Davis whether the Town had any communications with ICE regarding a cost allocation plan for the operation of the Farmville Detention Center (FDC). He stated in response, "I can only speak to since my time there in this position. I have not had any contact."

17.    I questioned Dr. Davis about a news article which referenced a "Farmville town commission" which "will oversee the facility." Dr. Davis said he had "no idea" what the Farmville town commission is.

18.    The article further quoted Mr. Gerald Spates, Dr. Davis' predecessor, as saying "We are ultimately responsible for this," referencing the detention facility. When asked what the then-Town Manager meant by this, Dr. Davis responded, "I could not tell you what he meant in 2008." Dr. Davis disputed a similar statement made by Mr. Spates in a Town Council Meeting in 2008 that the "Town will have oversight of this facility."

3

19.     Dr. Davis claimed to be unfamiliar with many of the Town Council meetings before his time as Town Manager. All these Town Council meetings which we referenced during the deposition discussed an immigration detention facility, FDC, or ICA.

20.     In one Town Council meeting held on March 29, 2007, the official meeting minutes showed that Mr. Russell Harper withdrew an earlier proposal to the Town to build a detention facility in Farmville after the Town received some questions from local businesses about the facility. When I asked what those questions or concerns were, Dr. Davis replied, "I have no idea."

21.     In reference to the same 2007 Town Council meeting, Dr. Davis' counsel stated, "the town is in a difficult position because of the change over, so we are obviously looking at historical documents. The town doesn't – as a whole doesn't have all of the knowledge that those who were present at this 2007 meeting would have. Mr. Davis -- Dr. Davis is interpreting that in his personal capacity, not his capacity as a corporate representative for the town."

22.     I asked Dr. Davis about details regarding proposals to expand the FDC. Regarding a proposed expansion in 2014 discussed in a Farmville Town Council, Dr. Davis testified that he did not know what specifically the addition to the detention facility was. He stated that he did not believe the proposed expansion went through because he did not believe "the building has been expanded since the original construction." When I asked why the proposed expansion did not go through, he replied "I don't know."

23.     Dr. Davis similarly testified that he did not know the details of a proposed expansion discussed in a 2018 meeting of the Finance and Ordinance Committee of the Town of Farmville. Dr. Davis testified that he was present at this meeting. The meeting minutes stated that "[w]ith the expansion, the Town will be proposing $2.00 per day per detainee," doubling the rate

the Town received prior to the potential expansion. When I asked Dr. Davis if the Town proposed the higher rate to ICA, Dr. Davis testified "I don't know if Mr. Spates did or not."

24.     I asked Dr. Davis if the Town is "notified when there is a contract discrepancy report issued by ICE," referencing an August 2017 contract discrepancy report regarding a pepper spray incident at the detention facility. He stated "I don't speak to this one particularly. I wasn't with the town and I don't have any knowledge from anyone or anything that we were notified by ICA, but no, not that I'm aware of."

25.     I pointed out a Town Council meeting in 2014 in which the then-Town Manager, Mr. Spates, provided "a monthly ICA housing report" to the Town Council. Dr. Davis testified that while he has never provided the Town Council with such a report, he did not know when this practice stopped.

26.     I asked Dr. Davis if the Town ever discusses requests under the Virginia Freedom of Information Act with ICA. He responded, "I can't say that they haven't. I'm not sure if some have or not, just maybe give an acknowledgment. I'm not sure."

27.     Dr. Davis testified that the Town has a memorandum of understanding with ICE that the local police department will investigate any allegations of "sexual assault or some type of an assault." When I inquired about whether the Farmville Police Department has ever investigated any sexual abuse allegation at the FDC, Dr. Davis responded, "I don't know for sure."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 20, 2021

_____

Amber Qureshi